UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
                                                 :

**BRIAN DUDLEY**,
                                                 :
                            Petitioner,         :

                                                 :    **MEMORANDUM DECISION AND**
                                                 :    **ORDER**
              – against –             :
                                                   :    2:19-CV-07270

**DARWIN LACLAIR**,
                                                 :

                                Defendant.        :
--------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

      The *pro se* petitioner petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]

(ECF No. 1.)  A jury convicted the petitioner of second-degree manslaughter, aggravated

unlicensed operation of a motor vehicle in the third degree, and driving while intoxicated.  The

petitioner was sentenced to an indeterminate prison term of five to 15 years on the manslaughter

conviction and concurrent sentences of one year for driving while intoxicated ("DWI") and 30

days for aggravated unlicensed operation of a motor vehicle.  (Sentencing Transcript, ECF No.

6-23 ("S. Tr.") 21; ECF No. 1 at 1.)  The petitioner asserts three claims: that the indictment was

jurisdictionally defective, that the evidence against him was legally insufficient, and the trial

court's jury instructions were improper.  For the reasons that follow, the petition is denied.

---

[1] The petitioner was in custody at the Franklin Correctional Facility when he filed this petition (*see* ECF No. 1 at 1); therefore, he satisfies the "in custody" provision of the habeas statute.  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *see also Williams v. Schneiderman*, 409 F. Supp. 3d 77, 80 (E.D.N.Y. 2017) ("When a habeas petitioner challenges the criminal conviction itself, the Supreme Court has been willing to presume the existence of collateral consequences sufficient to satisfy the case-or-controversy requirement . . . ." (internal quotation marks omitted)).

## BACKGROUND[2]

On December 28, 2013, at about 3:30 pm, the petitioner, driving his mother's car, struck and killed pedestrian Walter McDougal as Mr. McDougal was crossing the street.  The evidence established that the petitioner was intoxicated, driving fast and aggressively, and driving with a suspended license when he killed Mr. McDougal.

### I.    Trial

#### A.    The Prosecution's Case

The petitioner went to trial on July 25, 2016 before New York Supreme Court Judge Philip Grella and a jury.  (Trial Transcript ("T. Tr.") 1.)[3]  The prosecution called sixteen witnesses: Nassau County Police Officers Steven Martucci, John Monell, Bruce Schurmann, and Thomas Sullivan; Detective David Nystrom; Highway Patrol Bureau Officer Joseph Sedita; Homicide Squad Detective Gary Ferrucci; Police Medics Matthew Beshlian and Thomas Moustakis; Medical Examiner's Office employees Dr. Joseph Avella, Nicole DeSantis, Julia Diaz, and Brian O'Reilly; DMV employee Donna Weissbard; Westchester County Forensic Toxicology Lab Director Elizabeth Spratt; and O'Neil Pryce.  Their testimony established the following facts:

On December 28, 2013, a "cold, clear day," at about 3:15 p.m., O'Neil Pryce was driving on the Belt Parkway.  (T. Tr. 822:11-16, 823:6-13.)  When he turned onto Elmont Road, a Toyota Highlander "came up on [him] pretty fast, kind of aggressively" (T. Tr. 823:14-23); when the street widened from one to two lanes, the Toyota's driver "sped around" Mr. Pryce (T. Tr.

---

[2] Because the petitioner was convicted, I summarize the facts in the light most favorable to the verdict. *See United States v. Wasylyshyn*, 979 F.3d 165, 169 (2d Cir. 2020) (citing *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012)).

[3] The petitioner's motion to suppress evidence was denied after a hearing; the petitioner does not challenge that ruling.

824:1-4).  For the next few blocks, the Toyota's driver was going faster than Mr. Pryce (T. Tr. 826:8-21), and was "driving fast.  Fast and aggressive."  (T. Tr. 825:12.)

The Toyota stopped at every red light but sped through the intersections as soon as the lights turned green, and at one point, narrowly missed another car.  (T. Tr. 824–26.)  The Toyota's driver and Pryce were stopped at a red light between Elmont Road and Linden Boulevard.  (T. Tr. 824:12-19.)  When the light turned green, the Toyota "sped off" as another car turned onto Elmont Road.  (T. Tr. 824:23–825:1.)  The Toyota "almost crashed into that car"—it swerved, almost into oncoming traffic, to avoid the car.  (T. Tr. 825:1-9.)

The Toyota continued driving fast down Elmont Road and stopped at the red light at Elmont Road and Dutch Broadway.  (T. Tr. 825:19-21.)  As soon as the light turned green, the Toyota sped off (T. Tr. 825:22–826:3) toward Cerenzia Boulevard; the light was green, but Walter McDougal was crossing Elmont Road against the red light (T. Tr. 844:12-15).[4]  The Toyota struck Mr. McDougal, propelling his body to the southbound lane of Elmont Road.  (T. Tr. 294:1-2.)

Police officers Steven Martucci, John Monell and Bruce Schurmann and paramedic Thomas Moustakis arrived shortly thereafter.  Mr. McDougal was unresponsive and could not breathe on his own.  (T. Tr. 294–95.)  He was evacuated to a local hospital, but died later that day.  (T. Tr. 351:17-22, 352:2-4.)[5]

---

[4] A surveillance camera at Elmont Road and Dutch Broadway on captured the collision, and the video was introduced into evidence and shown to the jury.  (T. Tr. 789:7-15.)  According to the parties' arguments in summation, the video shows the petitioner hitting Mr. McDougal with his car after Mr. McDougal entered the crosswalk against the red light.  (T. Tr. 936:2-17, 974:3–975:4, 978:15.)

[5] Dr. Brian O'Reilly, the Deputy Medical Examiner at the Nassau County Medical Examiner's Office, performed the autopsy and determined that Mr. McDougal died from "blunt force trauma to his head, torso and extremities."  (T. Tr. 543:22, 544:2, 550:20-25.)

Officer Martucci asked the petitioner for his license, registration and proof of insurance. (T. Tr. 562:15-16.)  The petitioner gave the officer his insurance card, registration, and a New York State identification card; he said that his license was suspended.  (T. Tr. 564:13-18.)  The petitioner admitted to Officer Martucci and Officer Monell that he struck the victim and said that "the guy came out of nowhere."  (T. Tr. 562:8-9, 624:10-12.)  The petitioner also told Officer Martucci that he had been "driving a little fast."  (T. Tr. 563:20.)  The officers smelled alcohol coming from the petitioner (T. Tr. 354:13, 584:9-11, 624:19-20), and noticed that the petitioner's eyes were "glassy" and "bloodshot" (T. Tr. 354:1, 571:22-24, 624:19-21).  They asked him if he had been drinking.  The petitioner said that he had "one or two beers" earlier that afternoon.  (T. Tr. 564:4-7, 624:17–625:1.)  Officer Schurmann found a half-empty bottle of Heineken in the petitioner's car.  (T. Tr. 310:25–311:7, 314:15-16, 315:12-20.)[6]

Highway Patrol Officer Joseph Sedita arrived at around 4:25 p.m. to administer standard field sobriety tests.  (T. Tr. 482:9-11, 485:10-13, 488:10-13.)  He noticed that the petitioner's eyes were "glassy, bloodshot, [and] reddened," and that the petitioner seemed "stunned a little bit."  (T. Tr. 487:15-19.)  The petitioner told Officer Sedita that he "didn't mean to hit [Mr. McDougal; h]e just darted out across the street."  (T. Tr. 488:1-5.)  Officer Sedita administered field sobriety tests and determined that the petitioner was intoxicated.  (T. Tr. 498:13-16.)  At approximately 4:35 p.m., Officer Monell arrested the petitioner for driving while intoxicated (T. Tr. 627:14-19), advised him of his constitutional rights (T. Tr. 629:8-13), and took him to the Central Testing Section ("CTS") of the Nassau County Police Department (T. Tr. 638:16-17), where Officer Matthew Beshlian drew the petitioner's blood and sent it for testing to determine its blood alcohol content ("BAC") (T. Tr. 606:16-19).

---

[6] The petitioner's fingerprints were recovered from the bottle.  (T. Tr. 315:12-20.)

The Nassau County Medical Examiner's Office determined that the petitioner's BAC at the time the sample was drawn was between 0.1626 and 0.1665 percent.  (T. Tr. 736:12-14.)  According to forensic toxicologist Elizabeth Spratt, the petitioner's BAC would have been approximately between 0.187 and 0.214 at the time of the collision.  (T. Tr. 808:22-23.)[7]  Spratt testified that one drink, for someone around the petitioner's weight, "increases the blood alcohol concentration to . . . .022 percent" (T. Tr. 809:5-7); it was not scientifically possible for someone who had drunk only two beers, as petitioner claimed, to have a BAC of over 0.18.  (T. Tr. 808:24–809:12.)  Spratt explained that a 0.15 BAC gives a person a 25-times "higher chance of being involved in an accident than if [they were] sober."  (T. Tr. 804:9-12.)  Spratt also explained that alcohol affects a person's ability to drive a car safely by slowing a person's reaction time, making a person unable to react quickly to "unexpected things in [one's] environment," to "pay attention to what's inside of the car and what's outside of the car" at the same time, and to use peripheral vision.  (T. Tr. 804:1–805:6.)

At approximately 7:15 p.m., Detective David Nystrom arrived at CTS and advised the petitioner of his constitutional rights, which the petitioner waived.  (T. Tr. 428:25–429:2, 440:3-5.)  The petitioner made a statement identifying himself, waiving his rights, and stating the following:

> I was home and did not work today.  I had tried calling my cousin on a prior occasion and had got no answer.  I wanted to ask him about fixing my own car, a Honda, which I think blew a head gasket.  I borrowed my mother's car, a gold Toyota Highlander[,] and drove to Brooklyn, Park Place by Albany Avenue to talk with my cousin Alex Green.  I got there sometime in the early afternoon and stayed for about a half hour to 45 minutes to talk about my car.  I left there and had a beer on the way back.
>
> I noticed my mother's car needed gas, so I got off on Elmont Road north to Hempstead Turnpike to go to the Exxon gas station because they have the cheapest

---

[7] In 2013, the legal limit was a BAC of 0.08.  (T. Tr. 1003:9-13.)

gas there.  On the way there a person ran out in front of me by the firehouse and I hit him.  He was running from my right to the left.  After I hit him, I pulled over and waited for the police to come.  I didn't call 911 because I had no cell phone. Some other people had stopped at the scene.  I only had two beers today and no other alcohol.

The statement that Detective Nystrom has written for me is the truth.[8]

(T. Tr. 437:25–438:19; *see also* T. Tr. 437:1-21.)

### B.    The Defense's Case

The defense did not put on any evidence.  (T. Tr. 869:1-2, 871:9-11.)

### C.    Motions

At the close of the prosecution's case, defense counsel moved for a trial order of dismissal pursuant to New York Criminal Procedure Law ("C.P.L.") § 290.10(1), arguing that "the People did not put forth a prima facie case regarding each count of the indictment."  (T. Tr. 849:23–850:3.)  Judge Grella denied the motion because there was "sufficient proof, if accepted by . . . the jury, . . . if viewed and taken in a light most favorable to the People, to conclude that they have established every element of a prima facie case with regard to each and every charge in the indictment."  (T. Tr. 850:10-19.)

Counsel renewed his application at the close of the entire case (T. Tr. 869:7-12), which the court denied on the same basis (T. Tr. 869:19–870:5).

### D.    Jury Charge

Judge Grella gave the following charge on second-degree manslaughter:

> Under our law, a person is guilty of manslaughter in the second degree when that person recklessly causes the death of another person.  The term recklessly used in this definition has its own special meaning in our law.  I will now give you the meaning of that term.

---

[8] Detective Nystrom wrote out the petitioner's statement, which the petitioner reviewed and signed.  (T. Tr. 433:6-13, 434:8-10, 435:9-12.)

A person acts recklessly with respect to a death when that person engages in conduct which creates or contributes to a substantial and unjustifiable risk that another person's death will occur and when he is aware of and consciously disregards that risk and when that risk is of such nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

A person also acts recklessly when he creates such a risk but is unaware of that risk solely by reason of his voluntary intoxication.

Causes the death of has its own special meaning under our law.  I will give you that definition.

A person causes the death of another when that person's conduct is a sufficiently direct cause of such death of another.  A person's conduct is a sufficiently direct cause of death when, one, the conduct is an actual contributory cause of the death; and . . . two, when the death was a reasonably foreseeable result of the conduct.

Now let me explain each of those concepts.

First, when does a person's conduct constitute an actual contributory cause of the death of another?

A person's conduct is an actual contributory cause of the death of another when that conduct forged a link in the chain of causes which actually brought about the death.  In other words, when the conduct set in motion or continued in motion the events which ultimately resulted in the death.  An obscure or merely probable connection between the conduct and the death will not suffice.

At the same time, if a person's conduct is an actual contributory cause of the death of another, then it does not matter that such conduct was not the sole cause of the death or that a preexisting medical condition also contributed to the death or that the death did not immediately follow the injury.

Second, when is death a reasonably foreseeable result of the conduct?

Death is a reasonably foreseeable result of a person's conduct when the death should have been foreseen as being reasonably related to the actor's conduct.  It's not required that the death was the

inevitable result or even the most likely result and it is not required that the actor have intended to cause the death.

In order for you to find the defendant guilty of this crime, the People are required to prove from all the evidence in the case beyond a reasonable doubt both of the following two elements:

One, that on or about December 28, 2013 in the County of Nassau, the defendant, Brian Dudley caused the death of Walter McDougal;

And two, that the defendant did so recklessly.

Therefore, if you find that the People have proven beyond a reasonable doubt both of those elements, you must find the defendant guilty of the crime of manslaughter in the second degree as charged in the fourth count.

On the other hand, if you find that the People have not proven beyond a reasonable doubt either one or both of those elements, you must find the defendant not guilty of the crime of manslaughter in the second degree as charged in the fourth count.

(*Id.* at 1013–15.)

### E. Verdict and Sentence

On August 11, 2016, the jury convicted the petitioner of manslaughter in the second degree, N.Y. Penal Law § 125.15(1); operating a motor vehicle while under the influence of alcohol, N.Y. Veh. & Traf. Law § 1192(2) ("per se DWI"); and aggravated unlicensed operation of a motor vehicle, N.Y. Veh. & Traf. Law § 511.1(a).  (T. Tr. 1048:18-22, 1049:9-18.)  The jury acquitted the defendant of vehicular manslaughter in the second degree, N.Y. Penal Law § 125.12(1), and of operating a motor vehicle under the influence of alcohol, N.Y. Veh. & Traf. Law § 1192(3) ("common law DWI").  (T. Tr. 1048:23–1049:8.)

On December 5, 2016, the court sentenced the petitioner to an indeterminate term of 5 to 15 years for second-degree manslaughter, and concurrent terms of one year for driving while

intoxicated and 30 days for aggravated unlicensed operation of a motor vehicle.  (S. Tr. 20:20–21:8.)

## PROCEDURAL HISTORY

### I.      Rule 440 Motion

On March 22, 2017, the petitioner moved *pro se* to vacate the conviction, pursuant to C.P.L. § 440.10.  (ECF No. 6-33 at 2.)  The petitioner argued that his conviction was jurisdictionally and constitutionally invalid because the jury foreperson did not sign the indictment and that the indictment did not recite all essential elements of second-degree manslaughter.  (*Id.* at 4–8.)

On May 15, 2017, Judge David P. Sullivan of New York Supreme Court, Nassau County, denied the motion because the issues raised in it were "reviewable from the record."  (ECF No. 6-36 (citing C.P.L. § 440.10(2)(b)).)  He also "note[d] tangentially that all of" the petitioner's "instant claims [were] belied by the record."  (*Id.* (citing C.P.L. § 440.30(4)(c) and (d)).)

On June 26, 2017, the petitioner sought leave to appeal the denial of the 440.10 decision to the Appellate Division, Second Department, which the Appellate Division denied.  (ECF No. 6 ¶ 16.)  The petitioner did not move for further relief from the New York Court of Appeals.  (*Id.*)

### II.     Direct Appeal

On November 18, 2017, the petitioner, through counsel, appealed his conviction to the Appellate Division, Second Department, and raised two claims.  (ECF No. 6-24 at 48.)  First, he argued that the prosecution did not prove his guilt of second-degree manslaughter beyond a reasonable doubt, because the verdict was against the weight of the evidence.  (*Id.* at 37; *see also id.* at 21–37.)  Second, he argued that the court incorrectly determined at the pretrial hearing that

there was probable cause for his arrest (*id.* at 37), because the officers' observations of the petitioner's demeanor after the accident and during the field sobriety tests were inconsistent (*id.* at 39–42) and because the field breath test was improperly administered (*id.* at 42–47).  The petitioner also briefly argued that his post-arrest statements to the police should have been suppressed.  (*Id.* at 47–48.)

In a *pro se* supplemental brief, the petitioner argued that the indictment did not sufficiently allege second-degree manslaughter, in violation of C.P.L. § 200.50(7), and that the evidence before the grand jury was not sufficient to return an indictment for second-degree manslaughter.  (ECF No. 6-26 at 5–12.)  He also challenged the trial court's charge on manslaughter, arguing that the court "improperly instructed" the jury by "refus[ing] . . . to charge that slight negligence was not culpable," "where the evidence presented a question of fact as to whether [the petitioner] was guilty of culpable or at most of slight negligence."  (*Id.* at 12; *see id.* at 12–16.)  The petitioner also argued that he should have been acquitted of manslaughter because the prosecutor did not charge him with speeding or reckless driving, and because the jury acquitted him on the one of the DWI charges.  (*Id.* at 14.)

On February 27, 2019, the Second Department affirmed the conviction.  (ECF No. 6-28.) The court held that the petitioner's "appearance, the smell of alcohol that emanated from him, and his failure to pass field sobriety tests" established probable cause for his arrest.  (*Id.* at 2.) The court also held that the petitioner's conviction for second-degree manslaughter was not against the weight of the evidence.  (*Id.*)  Finally, the court rejected the *pro se* claims as "without merit."  (*Id.*)  On June 20, 2019, the Court of Appeals denied the petitioner's application for leave to appeal.  (ECF Nos. 6-29, 6-32.)

III.     **Federal Habeas Petition**

The petitioner filed this petition on December 12, 2019.  (ECF Nos. 1, 3.)  In it, he makes some of the same claims he raised in the Second Department: that the indictment was defective, that the evidence against him was insufficient, and that the judge's charge on recklessness was improper.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits the authority of federal courts to grant writs of habeas corpus to state prisoners.  Section 2254(a) permits a federal court to entertain only those applications claiming violations "of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

A petitioner can seek federal habeas corpus relief only after he exhausts his state court remedies and gives the state court a fair and full opportunity to review the merits of the claim.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  In other words, a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it."  *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).  Additionally, a federal court may not "review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  This bar applies to substantive and procedural state law grounds alike.  *Id.*

Even when issues are properly before a federal court, AEDPA's standards are "difficult to meet" because the Act sets a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 563

U.S. 170, 181 (2011) (citations omitted).  For claims that have been "adjudicated on the merits in State court proceedings," a federal court may not issue a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at 181 (quoting 28 U.S.C. § 2254(d)).  Federal court review "is limited to the record that was before the state court that adjudicated the claim on the merits," and "[t]he petitioner carries the burden of proof." *Id.* at 181–82.

A claim is considered "adjudicated on the merits" when a state court "(1) disposes of the claim 'on the merits[]' and (2) reduces its disposition to judgment," in which case "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).  For example, a state court ruling simply that a claim is "without merit" constitutes an adjudication on the merits of that claim. *Jimenez v. Walker*, 458 F.3d 130, 146 (2d Cir. 2006) (citing *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810–11 (2d Cir. 2000)).  In such a case, "the federal court will focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent." *Sellan*, 261 F.3d at 311–12 (citation omitted).

For the purposes of federal habeas review, "clearly established law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct

12

governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412–13. The court reviews the last reasoned state court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804–05 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). The state court's factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## DISCUSSION

The petitioner advances three arguments: the indictment was jurisdictionally deficient in violation of the Fifth and Sixth Amendments; the evidence against him was legally insufficient to support the second-degree manslaughter conviction, in violation of the Fourteenth Amendment; and the jury instructions on manslaughter were incorrect, in violation of the Fourteenth Amendment. (ECF No. 3 at 9, 12, 18.) I address each argument in turn.

## I. Sufficiency of the Indictment

The petitioner first challenged the indictment in a *pro se* motion pursuant to C.P.L. § 440.10, in which he argued that the indictment was deficient because the foreperson did not sign it and because it did not include all of the elements of second-degree manslaughter. (ECF No. 6-33 at 4–7.) In his *pro se* submission on direct appeal, he argued that the indictment did not allege facts sufficient to support the elements of second-degree manslaughter, in violation of C.P.L. § 200.50(7). (ECF No. 6-26 at 5–7.) In his petition before this Court, the petitioner argues that the indictment violated the Fifth and Sixth Amendments of the U.S. Constitution, as well as C.P.L. § 200.50(7), because it did not sufficiently define the term "recklessly" and did not allege any facts supporting the "recklessness" element of the second-degree manslaughter charge; the petitioner says that the grand jury might have believed that "slight negligence" was sufficient to establish second-degree manslaughter. (ECF No. 3 at 10, 12.)

Even assuming that this claim is exhausted, habeas relief is not available.  There is no federal constitutional right to indictment by a grand jury in a state criminal prosecution.  *See Alexander v. Louisiana*, 405 U.S. 625, 633 (1972); *Davis v. Mantello*, 42 F. App'x 488, 490 (2d Cir. 2002).  Accordingly, "a claim of deficiency in the proceeding is not 'cognizable in a habeas corpus proceeding.'"  *May v. Warden*, No. 07-CV-2176, 2010 WL 1904327, at *3 (S.D.N.Y. May 10, 2010) (quoting *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989).  Moreover, any error before the grand jury was rendered harmless by a conviction after trial.  *United States v. Mechanik*, 475 U.S. 66, 70 (1986).  *See also Lopez*, 865 F.2d at 31 (affirming denial of habeas claim challenging the sufficiency of the evidence before the grand jury because the petit jury "heard all relevant evidence and convicted" the petitioner).

Regardless, the indictment was not defective.  It charged that the petitioner, "on or about the 28th day of December, 2013, in the County of Nassau, State of New York, recklessly caused the death of Walter McDougal," which tracks the statute and thus sufficiently stated the "essential elements" of second-degree manslaughter.  (ECF No. 3-1 at 3.)  *See United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975) ("[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."); *Edwards v. Mazzuca*, No. 00-CV-2290, 2007 WL 2994449, at *5 (S.D.N.Y. Oct. 12, 2007).  The petitioner is not entitled to habeas relief on this claim.

## II.   Legal Sufficiency of the Evidence

The petitioner argues that the evidence was legally insufficient to establish his guilt of second-degree manslaughter, in violation of the Fourteenth Amendment.  (*See* ECF No. 3 at 12–

18.)  Even assuming that the petitioner properly exhausted this claim, the evidence was more than sufficient to establish his guilt of manslaughter in the second degree.[9]

An evidentiary sufficiency claim faces a "high bar" in federal habeas proceedings. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).  Evidence is legally sufficient if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citations omitted).  A district court's review of a legal sufficiency claim is "doubly deferential," because the court "may not grant the writ unless [it] conclude[s] that *no* reasonable court could have held that *any* reasonable jury could have read the evidence to establish [the] petitioner's guilt beyond a reasonable doubt." *Garbutt v. Conway*, 668 F.3d 79, 82 (2d Cir. 2012); *see Jackson*, 443 U.S. at 319.

In New York, "[a] person is guilty of manslaughter in the second degree when . . . [h]e recklessly causes the death of another person." N.Y. Penal Law § 125.15(1).  "A person acts recklessly . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists." *Id.* § 15.05(3).  Further, "[t]he risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.  A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto." *Id.*

---

[9] On direct appeal, the petitioner argued that his conviction was against the weight of the evidence. (*See* ECF No. 6-24 at 21.)  In this petition, the petitioner does not make that argument—rather, he asserts, for the first time, that the evidence was not legally sufficient to support a conviction for second-degree manslaughter.  (ECF No. 3 at 12–18.)  The respondent argues that this claim was not fairly presented in state court because "an argument concerning the weight of the evidence is purely grounded in state law" and does not implicate an argument that "the evidence was insufficient as a matter of federal due process."  (ECF No. 6 at 28–29.)

15

The jury convicted the petitioner of manslaughter and driving while intoxicated pursuant to New York Vehicle & Traffic Law ("VTL") Section 1192.2, the so-called *per se* DWI charge; the jury acquitted the petitioner of VTL Section 1192.3, the "common law intoxication" charge. The petitioner argues that his acquittal on one of the DWI charges means that the evidence of second-degree manslaughter was insufficient. This argument is not persuasive. First, intoxication is not an element of manslaughter in the second degree. Moreover, "an acquittal is not a preclusive finding of any fact, in the same trial, that could have underlain the jury's determination." *People v. Abraham*, 22 N.Y.3d 140, 147 (2013). While an appellate court evaluating the weight of the evidence on one count may, in some circumstances, consider the significance of an acquittal on another count, *People v. Rayam*, 94 N.Y.2d 557, 563 & n.* (2000), courts "are not permitted to consider inconsistent verdicts in assessing the sufficiency of the evidence," *United States v. Tyo*, 572 F. App'x 42, 44 (2d Cir. 2014). *See also United States v. Powell*, 469 U.S. 57, 67 (1984) ("Sufficiency-of-the-evidence review . . . should be independent of the jury's determination that evidence on another count was insufficient."); *People v. Loughlin*, 76 N.Y.2d 804, 807 (1990) (holding that the jury's verdict on criminally negligent homicide was valid "despite its inconsistent verdicts as to the [other] crimes that had intoxication as an element"); *People v. Briskin*, 125 A.D.3d 1113, 1119 (3d Dept. 2015) ("[T]he fact that [the] defendant was acquitted of driving while intoxicated does not preclude a finding that her conduct on the night in question was reckless, nor does her acquittal in this regard undermine her conviction of manslaughter in the second degree.").

The evidence was sufficient for the jury to conclude that the petitioner recklessly caused Mr. McDougal's death. A witness saw him driving "fast" and "aggressive[ly]" moments before he struck the victim. (T. Tr. 825:12.) Indeed, according to the witness, the petitioner narrowly

missed two collisions with oncoming traffic.  The petitioner also told Officer Martucci at the scene that he had been "driving a little fast."  (T. Tr. 563:20.)  *See People v. Wolz*, 300 A.D.2d 606, 606 (2d Dep't 2002) (holding that the evidence was legally sufficient to establish the defendant's guilt of second-degree manslaughter where he "was driving at an excessive rate of speed, weaving in and around other vehicles, and drove onto the shoulder of the road before losing control of his car and crossing the median into the opposing lane of traffic").

The evidence was equally clear that the petitioner was intoxicated.  Notably, his blood alcohol level hours after the collision was 0.16 percent, twice the legal limit; at the time of the collision, it would have been approximately between 0.187 and 0.214 percent.  (T. Tr. 808:22–23.)  The prosecution's expert testified that one drink raises a person's BAC about 0.022 percent; the petitioner's blood alcohol content of 0.16 percent at the time of testing suggests that he drank between eight and ten alcoholic drinks, far more than the "one or two beers" he claimed to have had.  (T. Tr. 809:5-7, 808:24–809:12.)  The additional evidence corroborated the scientific evidence; the petitioner's eyes were red and bloodshot, he smelled of alcohol and there was a half-consumed bottle of beer in his car.  *See Briskin*, 125 A.D.3d at 1115, 1119–20 (finding that the evidence was more than sufficient to establish recklessness where the defendant had consumed two glasses of red wine, failed several sobriety tests, possessed a BAC of 0.11 percent, and witness testimony established that she had swerved into oncoming traffic and missed a stop sign); *see also People v. Crosby*, 151 A.D.3d 1184, 1188 (3rd Dep't 2017) (finding that excessive speed coupled with swerving prior to the accident was sufficient to establish recklessness).

In short, the evidence of the petitioner's guilt was legally sufficient.

### III.    Jury Instruction

The petitioner argues that the trial court's instruction on recklessness violated his "right to a fair trial" in violation of the Due Process Clause of the Fourteenth Amendment.  (ECF No. 3 at 18.)  According to the petitioner, the court should have instructed the jury on the difference between "slight" and "culpable" negligence.  (*Id.* at 20.)

The Appellate Division rejected this claim on the merits.  (ECF No. 6-28 at 2 (holding that the claim was "without merit").)  *See Harrington v. Richter*, 562 U.S. 86, 98–99 (2011) (holding that state court decisions that are silent about the basis for the decision are treated as merits determinations entitled to AEDPA deference).  The petitioner has not shown that the state court's denial of the claim was "contrary to, or involved an unreasonable determination of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Cullen*, 563 U.S. at 181 (quoting 28 U.S.C. § 2254(d)).  Accordingly, federal habeas relief is not warranted.

In any case, the petitioner is not entitled to relief.  To obtain a federal habeas writ based on "error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law."  *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001) (quoting *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir. 1985)).  The petitioner must also show that the error "was sufficiently harmful to make the conviction unfair."  *Jackson*, 404 F.3d at 624 (quoting quoting *Davis*, 270 F.3d at 124).

A petitioner seeking to show that jury instructions were constitutionally erroneous faces an "especially heavy burden."  *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).  Mere "'ambiguity, inconsistency, or deficiency'

in the instruction . . . does not necessarily constitute a due process violation." *Id.* (citation omitted)*.* Rather, the petitioner must show that the instruction was ambiguous *and* that there was "a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Id.* at 190–91. The relevant standard is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violate[d] due process." *Id.*

The petitioner faults the court for not charging the jury on negligence, but negligence was not the requisite mental state for manslaughter in the second degree. Rather, the mental state is recklessness. In New York, "[a] person acts recklessly with respect to a result or to a circumstance" when "he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists." N.Y. Penal Law § 15.05(3). "The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." *Id.* Additionally, "[a] person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly." *Id.*

The trial court quoted this language in its charge, and therefore charged the jury on the correct standard. Indeed, the court used the charge verbatim from New York's Pattern Jury Instructions. *See* CJI.2d, Penal Law Art. 125.15(1) (N.Y.) "Where alleged erroneous jury instructions either stem or quote directly from the state statute or fail to infect the trial and conviction in a manner violating due process, courts routinely deny habeas relief." *Constant v. Martuscello*, 119 F. Supp. 3d 87, 141 (E.D.N.Y. 2015); *see also Robinson v. Heath*, No. 12-CV-2116, 2013 WL 5774544, at *7 (E.D.N.Y. Oct. 24, 2023) (finding that the trial court did not err in merely repeating the original jury instructions on intoxication because the instructions were "a

clear and accurate statement of New York's law").  The court's charge was correct in all

respects.

## CONCLUSION

For these reasons, the petition for writ of habeas corpus is denied, and the case is dismissed.  A certificate of appealability will not be issued.  *See* 28 U.S.C. § 2253(c).

**SO ORDERED.**

s/ Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
        December 27, 2023